UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

In re:  }
        }
ISIAH GADDIS and  }  Case No. 11-40050-JJR-13
TANDRA GADDIS,    }
        }
        Debtors.  }
_____

# MEMORANDUM OPINION

This chapter 13 case came before the Court for confirmation of the Debtors' amended plan (Doc. 63 and herein, the "Plan").[1] The Trustee objected to confirmation and sought dismissal of the case (Doc. 70 and herein, the "Trustee's Objection"). The Trustee's Objection asserted several grounds on which confirmation should be denied and the case dismissed, including that the Plan was not proposed in good faith as required by section 1325(a)(3) of the Bankruptcy Code.[2] The Court agrees with the Trustee. Moreover, independent of objections by parties in interest, the Court is required to find that the Debtors' case, not just the proposed Plan, was filed in good faith. §1325(a)(7).[3]

---

[1] The Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the General Order of Reference, as amended, entered by the United States District Court for the Northern District of Alabama. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); therefore, the Court has authority to enter a final order.

[2] 11 U.S.C. § 101 *et seq*, and herein the "Code." "Section" and "§" designate a section, subsection or other subdivision of the Code.

[3] *United Student Aid Funds, Inc. v. Espinosa*, 130 S.Ct. 1367, 1381 n.14 (2010) (bankruptcy courts required to address defects in proposed plans even if no creditor raises issue); *Alabama Dept. of Economic & Community Affairs v. Ball Healthcare-Dallas, LLC (In re Lett)*, 632 F.3d 1216, 1228-30 (11 Cir. 2011) (bankruptcy courts have independent obligation to determine if absolute priority rule was violated); *Universal American Mortgage Co. v. Bateman (In re Bateman)*, 331 F.3d 821, 828 n.6 (11th Cir. 2003) (independent duty of bankruptcy court to

The Debtors filed this chapter 13 case on January 7, 2011, but this was not the first time they had sought relief under the Code. During 2007 they filed chapter 7 cases in which they received discharges (the "2007 Cases"). Mrs. Gaddis's 2007 Case was filed November 7, 2007, and Mr. Gaddis's 2007 Case was filed December 28, 2007. Section 1328(f))(1) was added to the Code with the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). That Section provides that "the court shall not grant a discharge [in a chapter 13 case] if the debtor has received a discharge . . . in a case filed under chapter 7 . . . during the 4-year period preceding the date of the order for relief . . . ." Hence, neither of the Debtors is eligible to receive a discharge in this case.

The Debtor's Plan had a commitment period of 5 years,[4] and it proposed to pay six secured claims, including three car loans, the Debtors' home mortgage, and purchase money loans for a dinette and a utility building; it also purported to pay 100% of the Debtors' unsecured debts. A review of the Debtors' Plan and schedules, in particular Schedules D, E, F and G, revealed that after filing their 2007 Cases, they added at least 37 new creditors to the liability side of their financial statement, and they incurred new debts totaling $37,620, plus unknown amounts for a lease-to-own TV and a vacation contract. According to the Debtors' schedules, these post-2007 debts (excluding

---

ensure compliance with Code).

[4]The Debtors' annualized current monthly income is below the applicable median, thus the Plan's commitment period should not have been longer than 3 years unless for cause the Court approved a longer period, not to exceed 5 years, which it did not. § 1322(d)(2). The Debtors offered no poof that cause existed to justify a longer commitment period. Nonetheless, it is worth noting that a 3 year commitment period would fall short of covering the remainder of the 8 years that must lapse following the 2007 Cases before the Debtors will be entitled to another chapter 7 discharge, while 5 years will more than cover the remainder of the waiting period required under § 727(a)(8).

2

those for the TV and vacation contract) include secured claims of $12,954, a priority claim of $4,500 for federal income taxes, and 31 unsecured claims totaling $20,166.[5]

Recall that § 1328(f)(1) prohibits the Debtors from receiving a discharge in this case because less than four years had lapsed since their 2007 Cases were filed. A similar provision limiting discharge under chapter 7 is found in § 727(a)(8) and (9). A debtor may not receive a discharge in a chapter 7 case filed during the 8-year period[6] after the petition date of a chapter 7 or 11 case in which he received a discharge, or less than 6 years after the petition date of a chapter 12 or 13 case in which he received a discharge.[7] § 727(a)(8), (9).

In a pre-BAPCPA decision the Supreme Court held that there was no prohibition against a debtor who had recently received a chapter 7 discharge, seeking relief under chapter 13 for the purpose of paying his mortgage arrears and staying foreclosure. *Johnson v. Home State Bank*, 501 U.S. 78 (1991). *See also*, *In re Saylors*, 869 F.2d 1434 (11th Cir. 1989); *Downey Savings and Loan Association v. Metz (In re Metz)*, 820 F.2d 1495 (9th Cir. 1987). With regards to whether the pre-BAPCPA Code permitted a debtor to file a chapter 13 case on the heels of a chapter 7 discharge, the *Johnson* Court stated:

> Congress has expressly *prohibited* various forms of serial filings. See, *e.g.*, 11 U.S.C. § 109(g) (no filings within 180 days of dismissal); § 727(a)(8) (no Chapter 7 filing within six years of a Chapter 7 or Chapter 11 filing); § 727(a)(9) (limitation

---

[5]Schedule F listed Acceptance Loan Co. as an unsecured creditor, while the Plan proposed to pay this claim as fully secured by a utility building.

[6]The pre-BAPCPA Code required a 6 year gap between the filing dates of the serial chapter 7 cases.

[7]The 6-year waiting period does not apply if the previous chapter 12 or 13 case paid 100% of unsecured claims, or at least 70% of such claims and the plan was proposed in good faith and was the debtor's best effort. § 727(a)(9)(A),(B).

3

> on Chapter 7 filing within six years of Chapter 12 or Chapter 13 filing). The absence of a like *prohibition* of serial filings of Chapter 7 and Chapter 13 petitions, combined with the evident care with which Congress fashioned these express *prohibitions*, convinces us that Congress did not intend categorically to foreclose the benefit of Chapter 13 reorganization to a debtor who previously has filed for Chapter 7 relief.

501 U.S. at 87 (emphasis added).

In *Johnson*, the Supreme Court appears to have construed various Code provisions that deny discharge in chapter 7 cases — specifically cases filed by serial filers who did not wait the allotted time between cases to again become eligible for a discharge — as a prohibition against filing such cases. In other words, if a serial chapter 7 debtor was not entitled to a discharge under the Code, he was prohibited from seeking relief. The Supreme Court likened § 109(g) — "no individual . . . may be a debtor under this title" — with § 727(a)(8) and (9) which prohibit certain serial filers from receiving a discharge under chapter 7. Significantly, the pre-BAPCPA Code did not bar a debtor from receiving a discharge under chapter 13 regardless of when he had previously filed a chapter 7 case in which he received a discharge. Hence, the Supreme Court concluded that in light of "[t]he absence of a like prohibition of serial filings of Chapter 7 and Chapter 13 petitions" a debtor who was recently discharged under chapter 7 was not prohibited from seeking relief under pre-BAPCPA chapter 13. However, with the adoption of BAPCPA, Congress has now amended the Code to prohibit a court from granting a discharge to a chapter 13 debtor who was discharged in a chapter 7 case filed during the 4-year period preceding the petition date of the chapter 13 case. § 1328(f)(1). Accordingly, after the enactment of § 1328(f)(1) there is no longer — to use the Supreme Court's words — an "absence of a like prohibition of serial filings of Chapter 7 and Chapter 13 petitions."

This bankruptcy judge believes that with the enactment of BAPCPA, and specifically § 1328(f)(1), most chapter 13 debtors are now *prohibited* from seeking relief under chapter 13 until

4

the 4-year bar from discharge required by § 1328(f)(1) is satisfied; especially debtors who have incurred substantial post-chapter 7 debts and whose principal purpose for seeking chapter 13 relief is not to cure mortgage arrears that were left over after a recently granted chapter 7 discharge. In any event, § 1328(f)(1) cannot be ignored, and the ineligibility of a debtor to receive a discharge in a chapter 13 case must be considered as a critical factor in a court's determination of whether a chapter 13 case was filed in good faith as required by Section 1325(a)(7), a section also enacted with BAPCPA. *In re Gonzalez*, No. 08-15277-B-13, 2008 WL 5068837 (Bankr. E.D. Cal. Nov. 25, 2008). In fact, the Supreme Court in *Johnson* expressly made no ruling on the issue of good faith for the purposes of § 1325(a)(3) and remanded the case for further consideration of that issue.[8] 501 U.S. at 88. Thus, this Court's determination of whether confirmation of the Debtors' Plan should be denied and the case dismissed, will be decided, not based on a prediction of how the Supreme Court might modify its decision in *Johnson* following the enactment of BAPCPA, but on factual considerations that demonstrate whether or not the Debtors' case was filed in good faith.

      Although the Debtors' Plan proposes to pay 100% of unsecured claims over a commitment period of 5 years, that is illusory, and the Court is convinced this case will never last that long. Keeping in mind that the Debtors are not eligible for a discharge, their Plan, even if paid as proposed, will leave them personally liable for substantial sums of interest at non-bankruptcy contract rates owing on all (secured and unsecured) debts. And debts owing to creditors who do not timely file proofs of claim will be paid nothing and will likewise not be discharged. In other words, even if fully paid, the Plan will fall considerably short of providing the Debtors with a financial fresh

---

[8] Section 1325(a)(7), which requires that "the action of the debtor in filing the petition was in good faith" was added to the Code with the enactment of BAPCPA, and was not part of the Code when *Johnson v. Home State Bank* was decided.

5

start.

The Debtors' probable motive for filing this case was to bide their time under the protection of the automatic stay (§ 362), and later a confirmation order (§ 1327), until they become eligible for another chapter 7 discharge. While the Court cannot be absolutely certain of the Debtors' motives, it can look at the totality of the circumstances to determine whether their case was filed in good faith, especially at a time they were not eligible for a discharge.

In their chapter 13 cases, the debtors in *Johnson*, *Saylors* and *Metz* were attempting to cure mortgage defaults under § 1322(b)(5), not discharge additional debts they had imprudently incurred after their chapter 7 discharge. Little time had passed between their chapter 7 discharges and the filing of their chapter 13 petitions; and because they had just received a chapter 7 discharge, another discharge under chapter 13 would have been meaningless. What they were seeking was an opportunity to cure mortgage defaults and save their homes by staying *in rem* foreclosure proceedings. Unlike the debtors in *Johnson, Saylors* and *Metz*, the Debtors in this case did not immediately follow their chapter 7 discharge with a chapter 13 case. They waited over 3 years, during which time they incurred 37 new obligations and increased their debts by $37,620. And most significantly, their mortgage arrears — 3 monthly installments — was not a leftover from their 2007 Cases.

Finally, in *Kitchens v. Georgia Railroad Bank & Trust Co. (In re Kitchens)*, 702 F.2d 885 (11th Cir. 1983), the Eleventh Circuit listed several factors for a bankruptcy court to consider in its determination of a chapter 13 debtor's good faith. Among those factors are "the motivations of the debtor and his sincerity in seeking relief under the provisions of chapter 13 . . . special circumstances such as inordinate medical expense . . . the frequency with which the debtor has sought relief . . .

6

[and] the circumstances under which the debtor has contracted his debts and his demonstrated bona fides, or lack of the same, in dealings with his creditors . . . ." *Id*. 888-89. The Debtors' motives and their 2007 Cases have already been discussed. And it is the lack of special circumstances preceding the Debtors' case, rather than their existence, that is significant: There was no loss of employment, and no divorce or extensive medical bills; many of the Debtors' obligations were incurred in 2009 and 2010, and were for nonessential purchases, e.g. utility building, alarm system, TV satellite, expensive ($2,856) TV, and a 4 year vacation contract. Schedule F also discloses multiple pay-day loans that were borrowed at times when the Debtors were already heavily indebted for other obligations incurred after their discharges in the 2007 Cases. The Debtors' financial distress, for the most part, can be attributed to their excessive and imprudent use of credit, which does not, per se, prove bad faith. However, considering the totality of the circumstances, especially the Debtors' ineligibility for a discharge, convinces the court that good faith is lacking.

In light of the time that lapsed following the Debtors' chapter 7 discharges, their substantial post-discharge additional debts and their ineligibility for a chapter 13 discharge, and after consideration of the Eleventh Circuit's *"Kitchens* factors," the Court is persuaded that the Debtors' case was not filed in good faith. Confirmation of the Plan is due to be denied under § 1325(a)(3), and because the case was not filed in good faith, cause exists under § 1307(c) for dismissal. An order will be entered in conformity with this opinion.

Dated: June 20, 2011

/s/ James J. Robinson
JAMES J. ROBINSON
United States Bankruptcy Judge

7